UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Edwin C. Sevene,

    Plaintiff,

    v.                                                        Civil Action No. 2:10-cv-302

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 5, 9)

Plaintiff Edwin Sevene brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits. Pending before the Court are Sevene's motion to reverse the Commissioner's decision (Doc. 5), and the Commissioner's motion to affirm (Doc. 9).

For the reasons stated below, I recommend that Sevene's motion be GRANTED IN PART, and that the Commissioner's motion to affirm be DENIED.

## Background

Sevene was born on December 13, 1960, and thus was thirty-nine years old on the alleged disability onset date of March 1, 2000. (Administrative Record ("AR") 155.) He completed school through the ninth grade and thereafter received his GED. (AR 27, 164.) He has completed training in floor installation and furniture refinishing, and has

work experience doing floor installation, home building, light carpentry, painting, and furniture refinishing. (AR 29-30, 47, 160, 164.)

Sevene has a long history of lower back pain dating back to the 1980s. (AR 308, 311.) In October 1994, he sustained a work-related injury to his back, causing him pain and affecting his ability to work. (AR 30, 311.) He received worker's compensation benefits related to the back injury, and was pursuing further benefits as of August 2010. (AR 31-32, 300.) In December 1995, Sevene underwent back surgery; and approximately four years later, after attending a work-hardening program, he was able to return to full-time work. (AR 30, 309, 311.) Soon thereafter, however, Sevene's pain returned, and he stopped working full-time. (AR 30.) From 2000 through 2005, Sevene's only work activity was refinishing furniture for approximately fifteen-to-twenty hours each month. (AR 30-31.) Around this time, Sevene reports that he abused prescribed pain medications, including OxyContin, becoming addicted. (AR 37, 159, 265.) In addition to his back pain, the record reflects that Sevene has also suffered from obesity, depression with anxiety, insomnia, chronic sinusitis, Hepatitis C, diabetes, chronic obstructive pulmonary disease ("COPD"), bladder problems, hypertension, and chest pain. (*See, e.g.,* AR 315, 320-23.)

In March 2008, Sevene filed an application for supplemental security income, alleging that, starting on March 1, 2000, he became unable to work as a result of back and leg pain, as well as bladder and bowel problems. (AR 130, 159.) The application was denied initially and on reconsideration. (AR 53-60, 66-72.) On June 10, 2010, Administrative Law Judge ("ALJ") Paul Martin conducted a hearing on Martin's

2

application. (AR 22-52.) Sevene appeared and testified, and was represented by counsel. (*Id.*) Additionally, vocational expert ("VE") John Bopp was present and testified at the hearing. (AR 45-51.) On July 8, 2010, the ALJ issued a decision finding that Sevene was not disabled under the Social Security Act from the date of the application through the date of the decision. (AR 7-17.) The Decision Review Board did not complete its review of Sevene's claim during the time allowed, rendering the ALJ's decision final. (AR 1-3.) Having exhausted his administrative remedies, Sevene filed the Complaint in this action on December 9, 2010. (Doc. 1.)

## **ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the

3

performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The fifth and final step requires the ALJ to determine whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this sequential analysis, ALJ Martin first determined that Sevene had not engaged in substantial gainful activity during the relevant period.  (AR 9.)  At step two, the ALJ found that Sevene had the severe impairments of failed back syndrome, obesity, depressive disorder with anxiety, and a history of polysubstance abuse in full remission.  (AR 10-11.)  Conversely, the ALJ found that Sevene's diabetes, COPD, sinusitis, bladder problems, and chest pain were not severe.  (AR 11.)  Next, the ALJ determined that Sevene did not have an impairment or combination of impairments that met or medically equaled any impairment contained in the Listing of Impairments in 20 C.F.R. part 404, subpart P, appendix 1 ("the Listings").  (AR 11-13.)  The ALJ then determined Sevene's RFC, finding that he was able to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except that he needed to alternate between sitting and standing every thirty minutes; could not climb ladders, ropes, or scaffolds; could not crawl; could only occasionally kneel, crouch, bend, and stoop; could not be exposed to temperature

4

extremes, environmental irritants, or poorly-ventilated areas; and could not perform activities "requiring constant near visual acuity." (AR 13.)  The ALJ further determined that Sevene was able to understand, remember, and carry out one-to-three-step tasks; could focus on a task for up to two hours followed by "a couple of minutes break"; and could sustain regular production rates but would have difficulty with "fast-paced production" and "environments subjecting him to significant conflict." (*Id.*)

At step four, relying on VE Bopp's testimony, the ALJ found that Sevene was unable to perform his past relevant work as a floor installer and carpenter. (AR 15.)  At step five, again relying on the VE's testimony, the ALJ determined that there are jobs existing in significant numbers in the national economy that Sevene can perform, including cashier, food-checker, ticket-seller, addresser, and office-helper. (AR 16.)  The ALJ concluded that Sevene had not been under a disability, as defined in the Social Security Act, from the application date through the date of the decision. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

5

423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore v. Astrue*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

**I.       Combined Effects of Impairments**

Sevene argues that the ALJ erroneously failed to discuss the combined effect of his back pain, obesity, and depression.  The regulations require that, at step two of the five-step sequential process, ALJs must consider "the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to be the basis for disability benefits eligibility.  20 C.F.R. § 404.1523; *see also* 404.1520(c).  The regulations further require that, in assessing a claimant's RFC, ALJs must "consider all of [the claimant's] medically determinable impairments of which [they] are aware, including [the claimant's] medically determinable impairments that are not 'severe' . . . ."  20 C.F.R. § 404.1545(a)(2); *see also* 20 C.F.R. § 404.1545(e).

Sevene fails to state any particular limitations on his ability to work that allegedly were caused by the combination of his back pain, obesity, and depression which the ALJ did not address or addressed in an inappropriate manner in his decision.  He simply states that his "back disorder [has] cause[d] functional limitations and inability to work, which, in turn, has caused an increase in depression and weight gain[,which, in turn, has led to obesity, which has] worsen[ed] his back disorder."  (Doc. 5 at 7.)  The ALJ was not required to expressly state this chain of causation in his decision.  It was enough for him to identify and consider each impairment, which he explicitly and thoroughly did in his step-two severity assessment.  (AR 10-11.)  Moreover, the ALJ noted at step three that he had considered "the effects of [Sevene's] obesity on his musculoskeletal impairment [i.e.,

7

back pain] as required by Social Security Ruling 02-01P" and that "[Sevene's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." (AR 12.) Further, in assessing Sevene's RFC, the ALJ discussed Sevene's treatment for back pain as well as his mental health issues, and noted that medical providers had prescribed weight loss to ease Sevene's back pain but Sevene had not complied. (AR 14-15.)

Where, as here, the ALJ's decision identifies each of the claimant's impairments, the decision is "not vulnerable to . . . reversal" on grounds that the ALJ failed to consider all of the claimed impairments in combination. *Tinsley v. Barnhart*, No. 3:01CV977 (DJS)(TPS), 2005 WL 1413233, at *6 (D. Conn. June 16, 2005); *see Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (finding that ALJ's statement that claimant's impairments, considered singly or in combination, did not meet a listing demonstrated that ALJ considered the cumulative effect of claimant's impairments). A review of the ALJ's decision, coupled with an overall review of the record, demonstrates that the ALJ considered all of Sevene's impairments, including his back pain, obesity, and depression, as well as the functional limitations caused by the combination thereof, in determining the severity of Sevene's impairments and in assessing Sevene's RFC. Thus, the ALJ's alleged failure to explicitly consider Sevene's limitations in combination is not grounds for remand.

## II. Credibility Determination

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human*

8

*Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). These reasons "*must be grounded in the evidence* and articulated in the determination or decision." *Id.* (emphasis added).

Sevene claims that the ALJ erred by failing to provide specific reasons for finding that Sevene's testimony about his physical limitations was not credible. (Doc. 5 at 11.) The ALJ did, however, provide specific reasons in support of his credibility determination. The real issue is whether those reasons are supported by the record; and I find that they are not. First, the ALJ stated in support of his credibility determination that Sevene "has received minimal medical care . . . ." (AR 14.) But the record – even as summarized in the Commissioner's motion – reflects that Sevene had many medical visits, particularly for his back pain, starting in 1993 (*see* Doc. 9 at 2-9; *see also* AR 218-23, 239-45, 253-55, 300-01, 307-12, 313-16, 320-23); and that during the approximately three-year period during which Sevene did not take medication for his back pain, he was weaning off narcotics as a result of his addiction thereto and was able to perform daily activities only "with excruciating pain" (AR 40; *see also* AR 34, 39, 176, 181).

Moreover, at least two physicians believed (and presumably advised Sevene) that he was "at [a] medical end result" starting in 1998, which could account for his limited

9

medical appointments thereafter.  (AR 311.)  Specifically, Dr. Todd Lefkoe stated in a medical report dated April 19, 2002:

> Despite physical therapy, [Sevene's] low back and left lower extremity pain persisted.  He was found to have radiographic evidence of an L4-5 disk herniation with impingement of the left L5 nerve root.  On December 14, 1995[, Sevene] underwent L4-5 and L5-S1 diskectomies and neuroforamenotomies.  After this procedure, [Sevene's] left lower extremity pain resolved, but his low back pain has persisted to this date.  [Sevene] completed a course of multidisciplinary rehabilitation at The Spine Institute of New England in 1998 and *was placed at [a] medical end result by Dr. Hazard on October 15, 1998*. . . .  He demonstrates clinical evidence of a chronic pain syndrome. . . .  His pain has obviously persisted long after the anticipated time frame for postoperative healing . . . .  I would state that *his low back pain has become a chronic problem and should be considered permanent in nature*.

(*Id.* (emphasis added).)[1]  Likewise, a January 2003 report from the Spine Institute of New England stated that, despite taking six Percocets each day, Sevene "continue[d] to have chronic low back pain" and "[wa]s essentially totally disabled from work."  (AR 315.)  Noting that Sevene's back pain was "constant, with many aggravating activities, and no relieving activities" (*id.*), the report recommended that Sevene "apply for disability and . . . try to get his worker's compensation opened back up" (AR 316).  The ALJ acknowledged this report, but afforded "little weight" to it because it included a "significant internal inconsistency," namely, it opined that Sevene was disabled while at the same time "recommend[ing] additional vocational rehabilitation" and providing "no medical end point."  (AR 15.)  This finding is unfounded for two principal reasons: (1) a

---

[1] In July 2002, Dr. Donald Weinberg stated that he "disagree[d] with Dr. Lefkoe's opinion that . . . Sevene [wa]s at [an] end medical result," opining that Sevene "would greatly benefit from vocational rehabilitation/consultation/evaluation in order for him to obtain long-term gainful employment that does not cause debilitating pain requiring narcotics . . . ."  (AR 313.)

10

medical provider may find his or her patient "disabled" without specifically stating that the patient is at or approaching a "medical end point"; and (2) the vocational rehabilitation recommendation was given in a medical report different than the January 2003 Spine Institute report, was prepared by a different medical provider, and was made approximately six months prior to the January 2003 report (*compare* AR 313 and AR 315-16).

Next, the ALJ supported his credibility assessment by stating that Sevene's "op[i]oid abuse . . . raises questions about the actual severity of the pain for the underlying back condition . . . ." (AR 14.)  In fact, although Sevene's well-documented abuse of pain medication, including prescribed narcotics,[2] may indicate that Sevene's complaints of pain were motivated by a desire to obtain narcotic pain medications; it could also indicate that Sevene's allegations of a high pain level were truthful.  *See, e.g., Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998) (finding that a need for strong doses of pain medication can actually support a plaintiff's credibility); *Preslicka v. Astrue*, No. 07-cv-4237, 2009 WL 490014, at *16 (D. Minn. Feb. 26, 2009) ("The record indicates that Plaintiff was prescribed strong narcotic pain medication over a significant period of time. The ALJ did not recognize that this fact tends to support Plaintiff's allegation of severe pain."). Social Security Ruling ("SSR") 96-7p states that "[p]ersistent attempts by

---

[2] (*See, e.g.,* AR 239-40, 246 ("[Sevene] is a 47 year-old gentleman with [a] history of narcotic drug abuse, including injecting drugs . . . ."), 316 ("I think it is extremely important that [Sevene] gets control of his pain, and I think Percocet is the wrong avenue.  I would strongly recommend Methadone . . ., because . . . its pain-relieving ability is much higher than most other medications, and also it is not a drug of abuse."), 321 ("[c]hronic pain meds tramadol and meloxicam without benefit[,] [c]ontrolled substances contract[,] opioid dependence on OxyContin 3 years ago"; "[h]e is now on opioids for chronic pain"; "[h]e's warned against tolerance of medication [and] clearly informed that I will not accelerate his pain medications given his past history of opioid dependence").)

11

[claimants] to obtain relief of pain or other symptoms, such as by increasing medications,. . . may be a strong indication that the symptoms are a source of distress to the [claimant] and generally lend support to a [claimant's] allegations of intense and persistent symptoms." *Id.* at *7. Thus, Sevene's use and abuse of narcotic pain medications was just one factor for the ALJ to consider in assessing Sevene's credibility, and it could just as easily have been used to support Sevene's complaints of pain as to discredit them.

     Another justification provided for the ALJ's credibility determination was that "recent treatment notes suggest that [Sevene's] pain has responded well" to treatment and that Sevene "is exercising more regularly." (AR 14.) Neither of these findings is supported by the record. In fact, the records cited by the ALJ in support of these findings – the June 2010 treatment notes of Dr. Joseph Brock (AR 319-23) – actually support opposite findings. Specifically, Dr. Brock reported that in October 2009, Sevene had "not lost weight" and was "not exercising." (AR 320.) And Dr. Brock noted that in February 2010, Sevene was "increasingly deconditioned and obese"; "his exercise cycle [wa]s broken"; and he was "taking his Celexa and meloxicam as prescribed[, but] feel[ing] overwhelmed and increasingly depressed." (AR 321.) Dr. Brock further reported that in June 2010, Sevene "ha[d] lapsed on his Celexa [and] describe[d] nausea and [a] sensation of a thickened tongue when taking this medication" (*id.*); was "not taking his metformin as prescribed because of GI symptoms" (AR 320); was "very worried about potential side effects of [medications]" (*id.*); had "accelerated his use [of] Norco and [would] run out before his allotted prescription time" (AR 321); was taking

12

"[c]hronic pain meds . . . without benefit" (*id.*); "need[ed] to increase activity to facilitate weight loss" (*id.*); and was "GAINING WEIGHT" (AR 320). The ALJ does not discuss these statements, and instead erroneously cites solely to Dr. Brock's treatment notes in support of the finding that "recent[ly]," Sevene's "pain has responded well" and Sevene "is exercising more regularly." (AR 14.)

Finally, the ALJ stated in support of his credibility determination that Sevene had a "relatively active level of daily tasks . . . including household chores, walking to his community center[,] and visiting friends." (AR 14-15.) The ALJ further stated that Sevene was able to "shop, interact with friends, [and] maintain his own apartment." (AR 15.) These findings fail to take into account Sevene's testimony at the administrative hearing that his ability to complete household chores, walk to the Community Center, and visit neighbors "depend[ed] on how great [his] pain [wa]s"; that he was required to "rest three or four times a day in [his]recliner" when he completed these activities; and that he could only do these activities "on a good day." (AR 38-39.) Moreover, Sevene's Function Report indicates that he had difficulty standing and preparing meals and could only prepare simple meals like sandwiches or toast; he could not stand or walk for any length of time; and the only household chore he was able to do was the laundry. (AR 168-69.) The Function Report further states that Sevene could walk only "<u>very</u> short distance[s]" and he had to rest for "at least 5 minutes" and sometimes up to "30 minutes or more" between periods of walking. (AR 171.) Sevene summarized his ability to complete daily activities in the Function Report as follows: "Normal, ordinary every day chores cause great pain. My daily life cons[i]sts of walking short distances, resting and

13

continuing. All I can do is non[-]strenuous activities." (AR 173.) In his Pain Report, Sevene reported that, because of continuous pain in his back, right hip, right leg, and feet, he "[could not] bend, sit for periods of time[,] or stand for periods of time."[3] (AR 175.)

Because the ALJ's adverse credibility finding, which was crucial to his rejection of Sevene's claim, was based on a misinterpretation of the evidence, as discussed above, it did not comply with the ALJ's obligation to consider "all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), and cannot stand. *See Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010). Thus, I recommend remanding to the Commissioner for a reassessment of Sevene's credibility.

## III. Dr. Brock's Opinion

On remand, the ALJ should also reevaluate the June 2010 treatment notes of treating physician Dr. Joseph Brock (*see* AR 320-23), and state in his decision what weight he gives to those records and why. Although, as the Commissioner points out, much of Dr. Brock's notes consist merely of the Doctor recording Sevene's subjective complaints, there are portions thereof which contain medical opinion. (*See, e.g.,* AR 321 (describing Sevene as "increasingly deconditioned and obese"), 322 (describing Sevene's "GENERAL APPERANCE" as "uncomfortable due to pain"), 323 (assessing Sevene as having "chronic low back pain" and "worse[ning]" depression disorder).) Under the well-known "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-

---

[3] The ALJ also misleadingly stated that Sevene "restored furniture for a number of years after his alleged onset date." (AR 14.) In fact, the record clearly reflects that Sevene restored furniture for only approximately fifteen-to-twenty hours each month from approximately 2000 through 2005, and Sevene would "take [his] time" on that work. (AR 30-31.)

14

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993). When a treating physician's opinion is not afforded controlling weight, the ALJ is required to provide "good reasons" for discounting it. 20 C.F.R. § 416.927(d)(2); *see also Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Here, even assuming Dr. Brock's opinions were not well-supported by medically-acceptable diagnostic techniques and were inconsistent with other substantial evidence in the record,[4] the ALJ should have given "good reasons" for rejecting them. Instead, the ALJ cited Dr. Brock's medical report merely in passing, and only in the most general manner, stating: "[A]s noted by Dr. Brock, the claimant has maintained normal gait, sensation and strength."[5] (AR 15.) The ALJ's failure to follow the treating physician rule with respect to Dr. Brock's June 2010 treatment notes provides further justification for remanding this matter to the Commissioner. *See Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we

---

[4] To the contrary, however, Dr. Brock's treatment notes are at least supported by the opinions of treating physicians Drs. Garry Weischedel and Michael Mindrum, each of whom opined in March 2007 and September 2008, respectively, that Sevene's chronic back pain "preclude[d] employment or training." (AR 317, 318.)

[5] In a similarly oversimplified and misleading manner, the ALJ discussed Dr. Brock's treatment notes earlier in his decision, stating: "In June 2010 the claimant was under the care of Dr. Joseph Brock for newly[-]diagnosed diabetes. He was treated for depression with medication and improvement was noted. The claimant did have some diffuse wheezing on examination, but he maintained normal gait, normal range of motion of the spine[,] and normal strength and sensory function." (AR 10.)

15

encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

## IV. Ability to Perform "Other Work"

Sevene's claim that the ALJ erroneously "relied" on Medical-Vocational Rule 202.21 in finding that Sevene was not disabled (Doc. 5 at 11), lacks merit, as the ALJ explicitly did not "rely" on that rule in support of his step-five determination. Rather, the ALJ found that Sevene's ability to perform all or substantially all of the requirements of Rule 202.21 "has been impeded by additional limitations" (AR 16), and thus merely used the rule "as a framework" to support the finding that jobs existed in significant numbers in the national economy that Sevene could perform (AR 15).

Sevene also implies that the ALJ erred in failing to explicitly discuss the VE's testimony that if Sevene needed to take one-half-hour breaks from work three times each day, he would not be able to engage in any work activity. (Doc. 5 at 12.) Given the above recommendations that the claim be remanded for a reassessment of Sevene's credibility and a more detailed analysis of Dr. Brock's treatment notes, I further recommend that the ALJ reconsider, on remand, his step-five decision regarding Sevene's ability to perform other work existing in significant numbers in the national economy. Depending on the ALJ's other findings, it may be necessary to consider the VE's testimony that Sevene "could not maintain employability" if he was required to take a break for one-half hour three times each day. (AR 51.)

## V.     August 2010 Functional Capacity Evaluation Report

Finally, on remand, the ALJ should consider the Functional Capacity Evaluation report prepared by occupational therapist ("OT") Charles Alexander in connection with Sevene's workers' compensation case. (Doc. 5-1.) The report was submitted by Sevene to the Decision Review Board on August 9, 2010, approximately one month after the ALJ's decision was issued. (*Id.* at 1.) In the report, OT Alexander concludes that "Sevene currently does not have a work capacity based on the Dictionary of Occupational Titles"; "employment is unlikely"; and "[b]ased on the chronic nature of [his back] injury[,] it is unlikely that [Sevene's] abilities are going to change." (*Id.* at 24.)

The Second Circuit has developed a three-part test, allowing supplementation of the record where evidence is:

> (1) 'new' and not merely cumulative of what is already in the record . . .[; and] (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . .[; and (3) where there is] good cause for [the claimant's] failure to present the evidence earlier."

*Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991) (internal citations omitted). Sevene has failed to offer any legal argument in support of his request that the ALJ consider Alexander's report. Nonetheless, *because I am recommending remand for the other substantive reasons discussed above*, and in the interest of deciding claims on their merits, I find that the ALJ should consider the report on remand. The report is new, as it was not created until approximately one month after the ALJ's decision; and it is not cumulative of other evidence in the record, as it includes detailed test results and analysis thereof by an OT who specializes in assessing

17

individuals' ability to work. Moreover, there was good cause for Sevene's failure to present the report earlier, given that the testing upon which it is founded was performed in conjunction with Sevene's workers' compensation case and did not occur until approximately one month after the ALJ's decision. (Doc. 5-1 at 1.) Finally, the report is "material," meaning there is "a reasonable possibility that [it] would have influenced the [Commissioner] to decide [Sevene's] application differently," *Lisa*, 940 F.2d at 43, because it explicitly finds that Sevene is unable to work and it supports that finding with specific and detailed test results and an analysis of Sevene's credibility regarding his reporting of pain levels. The report is not binding or even entitled to substantial weight, but it is useful to the ALJ's analysis and thus should be considered on remand. If the ALJ opts to reject the findings contained in the report, he should explain his reasoning.

## Conclusion

For these reasons, I recommend that the Commissioner's motion (Doc. 9) be DENIED, and that Sevene's motion (Doc. 5) be GRANTED, in part, such that the matter be remanded for a new hearing to reassess the evidence and further development of the record, as discussed above. That portion of Sevene's motion seeking an award of benefits and a remand for a calculation of benefits should be DENIED, given that the ALJ has applied an improper legal standard and it cannot be said that a remand for further evidentiary proceedings would serve no purpose. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence. On the other hand, we have

reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.") (citations omitted); *see also Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).  I further recommend that that portion of Sevene's motion consisting of an unsubstantiated request that the case be assigned to a different ALJ and that time limits be specified on remand be DENIED.

Dated at Burlington, in the District of Vermont, this 15th day of September, 2011.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).  Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).